of America, 20-71709, Rafael Munoz Gonzalez, 20-71710, Michael Anthony Torres, 20-71724, and I believe they have their batched as an issue, and each side has 15 minutes. And my review of the calendar indicates that we have the same lawyers on all three cases. So am I correct on all of that? You're correct, Sharma. All right. Thank you. Then we'll go ahead and proceed with the, I guess, the applicant petitioners. And that would be you, Ms. Mircheff. Yes. Good morning, Your Honors. Good morning. And may it please the Court, my name is Brianna Mircheff, and I represent, as you just said, all three applicants in this case. I intend to reserve about five minutes of my time for rebuttal, and I will watch my own clock. This case involves a novel government argument that a pro se detainee who is otherwise eligible to proceed on a second or successive previous petition, and who files within the one-year EDPA statute of limitations, would lose his right to proceed on that claim, solely because he fails to file an amended claim in the district court during the brief two- to four-month period after which the Supreme Court decides his case. No court nationwide has come anywhere close to setting such a demanding standard. Indeed, the only individuals who have lost under the previously unavailable standard for a case that came out after their 2255 was denied, or was filed, I'm sorry, are individuals who are counseled and sat on their hands for two, three, and four times as long as the time period at issue here. Well, what would you say, assuming that we have some agreement with you, how much time do you believe that the petitioners would have needed to review and understand Davis before their claims would have been deemed available to them? So, I don't know that this case presents what the outer limits of that rule would be, but I do think that it's telling that Congress, when it passed EDPA, gave individuals one full year to determine that they had a claim, figure out where it needed to be filed, how it needed to be filed, to get the form, to do their research, to do their pleadings, and get it on file in the district court. And that's not accounting for the time that it would take to understand the civil rules of procedure and what is required to amend a complaint. Well, I guess I know that in your argument you talk about educational level, amount of law library access, etc., etc. So, what's your best argument for the proposition that we should take into account factors like their educational level, the amount of law library time access in determining when new precedent becomes available to them for the purposes of 2244? Sure. And just to be clear what our position is, I don't know that those things are ultimately going to be dispositive. Obviously, at this juncture, we have to include all the facts that we think might be relevant. To me, I think the most relevant facts are the facts that the individual was pro se, was detained, that one of the individuals was in the shoe, some of those more kind of core facts that talk about the availability of the claim. However, I do think it's relevant that other courts that have looked at this question talk about the fact that this is not a mechanistic test. There are going to be vast gray areas and that the court has to take a pragmatic approach. So, do you think we should adopt the feasibility test? So, several courts have used the word feasibility. I do think it's telling, though, in the context of In Re Woods, that the court equated feasibility with functional availability. And functional availability, I think, is closer to what I believe the standards should be. I do also think that brings the term available in line with the Supreme Court's decision in Rossi Blake. Rossi Blake is a case about what it means for a remedy to be available, and specifically in the context of the Prison Reform Litigation Act. I want to jump in there a little bit. It seems to me that there's a difference between making sure that someone has an opportunity to figure out that they have a claim and then assert it, and then whether that person who has an opportunity is going to be able to figure it out. And so I guess that gets to some of the factors that Judge Callahan was just asking about that you put in your briefing. And so I'm curious where you think the line should be, particularly in light of Ross, because I agree with you that that's relevant here. Even though the Supreme Court was looking at a different statute, the same idea was being discussed in what they were deciding in Ross. So is it just giving somebody a reasonable opportunity, a full opportunity to figure it out, or do they actually also have to have figured it out? Right. So I do think the most important thing, if you're looking at the analogy to Rossi Blake, are factors about when was Davis available, right? Some of these individuals indicate that Davis wasn't available on their computer yet, or they were in the shoe and they really didn't have access to it. Again, the same thing with the Rule 15 amendment procedure. I do think those are the most important facts under Rossi Blake. So I do agree that the rule should not be how long would it take these individuals to figure out that they might have a very complex claim. But part of the thinking, I think, in giving individuals a year under AEDPA is that in a year, a lot of things happen that don't require one individual sitting by himself to figure out that he's got a claim, right? Other inmates might file petitions. Other inmates are contacted by their counsel. Other inmates win decisions, and those decisions appear on the district court or on the computer programs. Well, let me cross-examine you a little bit here. I'll leave you alone, but that's what we do. Because you said it doesn't mean that they have to figure out that they have a claim, but that wouldn't be exactly the test. So with respect to Cesar Gonzalez, he's in a little different position than the others, because to me it seems counterintuitive to say that his Davis claim was previously unavailable when he cited and relied on that case in briefing in support of his initial petition. So even if he hadn't read Davis when he first cited it, wasn't he at least on notice and he should review the case at that point? So, I mean, it was available. He just didn't make the best argument. And that's, I think he's got a little, I think he's on a little less solid ground than the other two. So I do agree that he's probably of the three, the most challenging case. I do think that, right, it's not only about understanding you have a claim in this case, but also understanding what to do with that claim, right? Not that you can sit to file a second or successive petition, but that you have to amend your petition. And just a few important facts about Cesar in particular, right? He filed a form, the form that's approved by the Central District of California. That form says include all the claims that you have for your motion in this one form. And it says if you don't, you may not be able to raise claims later. Followed after that, Judge Klausner issued an order that reinforced that, right? It said, you filed your motion, that's filed. Okay, the government gets an opposition and then you get to respond to what the government has said. After that, your claim is being submitted. Meaning, again, like I said in the brief, don't call us, we'll call you. In that context, I don't think you can say that the claim was available to him, given that he had been practically discouraged from filing his claim by Judge Klausner's instructions and by the form, which essentially told him, you've got to put everything in here. Well, let me, let's say, I know factual innocence is not an issue here right now. But let's just say if I thought that that particular applicant, he cited Davis, it was available to him. Sorry, you know, it's that you made the argument and you don't get to make it in another way. If in fact your client is, if in fact Cesar is, Gonzalez is factually innocent, he still, that would be another avenue for him later, right? He would still have to file a successive petition and he would still bump into the same barrier. I know, but if he can make a showing that I am not actually, that I am not actually guilty of some things that I'm convicted of, he could get through the schlup factor. The schlup gateway would only permit him to get through procedural default and statute of limitations defenses, right? He would still have to file a second or successive petition and he would still, if that innocence claim were Davis-based, bump into this previously unavailable claim. If the door is shut to Mr. Munoz-Gonzalez, he will lose the chance to challenge his life sentence. I do want to just finish without... Okay, I won't cross-examine you anymore. I do want to just kind of finish the thought that I was proposing to Judge Morris, which is that that year seems that a lot of things are going to happen. The two other things that do happen are, you know, what happened here, which is that the federal defenders contact individuals who are sentenced within their district and inform people that they have a claim or that they may have a claim and ask them if they want to proceed with it. You know, attorneys send out blasts. There's a number of ways, right? All of these things are happening over the course of a year, and that's why I think it's not just enough to say, well, how long would it have taken one of these individuals with a sixth-grade education to sit in his cell and figure out that Rico... All of that makes perfect sense to me. What I'm struggling with is what do I do with the one-year rule and also the second and successive petition rule? Because the second and successive petition rule doesn't say that you get that one year automatically, right? Well, you have to also satisfy that one-year standard, right? So that individual still has to file the second or successive petition within one year. But the unavailability or the availability standard is its own thing. It is. And it doesn't cross-reference. It doesn't say that availability is going to be measured based on this one-year rule. So I don't know what to do with that. That's absolutely true. What I think you do with it is say that the same Congress, who meant to strictly limit how long habeas petitioners could string out their case, thought that one year was a reasonable amount of time for pro se detained individuals to figure out their claims and that there's no reason to think that they would want the previously unavailable rule to require them to do it ten months before their statute of limitations had run. That's how I see the connection between the two. So for what it's worth, I did want to reserve my time if there's questions. Can I ask you a quick question? Of course. The pragmatic approach that you've said the Fifth, the Eighth, the Eleventh Circuits have all adopted, moving away from a mechanistic test, in those courts have they said the feasibility analysis is then the applicable test, but the one year is the outer limit? Is that how they phrased it? No court has said that one year is the outer limit. And, in fact, several of these individuals had gone more than one year, but the court didn't make the analogy I'm making, which is that the one year mark is somewhat of a benchmark. Doesn't it make sense that even if you adopt a feasibility approach, that there should be an outside limit, almost a statute of limitations type concept that if we do a feasibility analysis, but once you get to a year or something, it's just we assume that it should have been feasible. I mean, isn't that something we should think about? I mean, that is a rule that would help my clients, and so I would be fine if that is the rule. I do also think because individuals have to file within the statute of limitations, there's other, right, there's kind of a coalescence around one year. I don't know that the court has to say that in this case, given that we're dealing with a two-month period of time for one of these individuals, or up to four and a half months or four and a half months for the at the greatest outside rate. If there are questions, reserve my thank you. Sure. All right, Mr. Alden. Good morning, Your Honors. May it please the court. Bram Alden for the United States, and I am prepared for cross-examination. I think really it is all about here how we give meaning and how the court gives meaning to the word available, and the government's position is that once a precedent is issued, it is indeed available. The standard is not understood. The standard is not discovered. In fact, the statute in 2255H1.  But because of the circumstances of someone's custody, whether they're in special housing or whether the rules of getting to the law library are such that they can't, they have no ability to learn that this decision has been issued. Would you agree that it's unavailable, at least in that scenario? And I get that there's a question about whether that scenario exists here, but let's assume it does. Would you agree that it's unavailable? Yes, Your Honor. I would agree that there's a logistical infeasibility standard whereby if a prisoner has no ability whatsoever to access a new case, that in those circumstances, yes, the case is unavailable under an infeasibility analysis. I think that infeasibility analysis should not be about prisoner sophistication. It should be about the kind of logistical constraints that Your Honor is mentioning, complete inability to access a prison law library or a decision coming out mere days before a petition is decided. In those circumstances, I do agree that there should be a test that says that case was unavailable to that petitioner. But if the standard is sophistication or legal acumen, then a Supreme Court case is never available to most pro se petitioners because everyone understands and knows that pro se petitioners are at a supreme disadvantage in terms of their legal acumen, but they are not guaranteed counsel and they are regularly held to the same procedural bars as other litigants. Construing their claims liberally is a substantive rule that benefits pro se petitioners. It does not excuse them from the procedural bars that apply universally. Well, would you agree, though, that if previously unavailable does require an individual assessment of each petitioner's individual circumstances and capabilities, or would you just say it's circumstances and capabilities has nothing to do with it? Yes, Your Honor, and I think that these... Well, I kind of gave you an or there, so the yes, so... The latter. The latter position that Your Honor articulated, which is circumstances, not capabilities, is the position that I think is most true to the word unavailable and also is consistent with Ross v. Blake and the kind of dead end or complete inability to access an administrative procedure. That is the sort of standard that makes sense in the context of the word available, and as Your Honor, Judge Callahan mentioned earlier, the petitioner, Cesar Gonzalez's ability to actually cite the Davis case in his reply brief a mere eight days after Davis was decided indicates that that case clearly was available to him. I want to follow up on this, and I meant to ask your opposing counsel this question. Maybe we'll do that in rebuttal, but so the record with regard to Cesar's citation of Davis, I think is that he learned about it from someone else who was helping him, and he stuck it in there in his reply brief, I think, in his first proceeding, and that he hadn't read it. So if, in fact, it's true that he had no ability to actually get a copy of the Davis petition during his first proceeding, what do you think the outcome should be? I would say that if he had no ability to actually go to the library, which is not what he alleges, then it would be a different case. None of these petitioners allege that they were completely barred off from the prison law library in the period after Davis was decided. And, of course, he presents these facts in his reply brief about another prisoner telling him about Davis, but that, too, may well make the case available if you can access it by means of someone else providing it to you. I don't think I would say I would go so far as saying just a synopsis would be sufficient, providing you a copy of the case would be. But there is a distinction that is important in the statute between 2255H1 and 2255H2, and H1 is the provision that applies to facts and says, in fact, in the statute, that it is a newly discovered evidence that might actually allow a petitioner to raise a second or successive claim, and uses discovered as the standard. H2 does not have discovery. H2, because it has availability as the threshold that a prisoner has to overcome, should be interpreted differently from the way that evidence is interpreted. A case, a rule of law, becomes available not when a prisoner understands it or discovers it or realizes that it benefits him. It becomes available when it's decided. Well, let me ask you this. Okay. So, let's say the inmate is blind. Okay.  Because if he can't just go read something, he has to have another step involved so that it would either have someone read it to him or something, or get something that would be accessible to him. Is that a factor that would be considered in an individual's circumstances? Yes. I think if the prison doesn't have a system whereby a blind inmate can access a case by means of hearing some sort of transcription of it or having it read to him, that would be a circumstance that would matter. Now, let's just say the inmate was a lawyer, a disgraced lawyer that went to prison. And would you then argue that the fact that the person – and let's say it was a constitutional lawyer, too, someone that was really good. Would you say that it was available sooner to that person because of their legal acumen? No, Your Honor. Because I do think there should be a distinction between the kinds of circumstances that actually prevent someone from seeing a case versus the circumstances that prevent someone from understanding a case. A constitutional lawyer would not – you wouldn't hold that against him just like you would hold against – it would be the same thing with a sixth-grade education. I think that the constitutional lawyers claim we might make an argument that the liberal construction that is ordinarily afforded to pro se litigants in terms of their substance of their claims is something that maybe should not be afforded to him. I don't think that we would make the argument that availability turns on your sophistication or your legal knowledge. Availability should be a universal concept that is determined based on when a decision is decided and as soon as a prisoner has access to that. Well, you didn't fall for my trap then, I guess. So, that was – because I could anticipate that I would be hearing that argument if it were a sophisticated person, but you're saying sophisticated versus sixth grade, that's not part of the test. No, I think I would make lots of arguments about a sophisticated litigant. They just wouldn't be about availability. They would be about procedural default and saying you could have raised this claim before your conviction became final. They would be those sorts of arguments. They would be different from is a rule of law available, and really that should be a universal application. Okay. Counsel, would you address Ms. Mershof's argument with regard to the one-year time limit? Yes, Your Honor. So, the one-year time limit obviously appears in a separate provision of the statute, and I think that, Your Honor, Judge Forrest, you pointed that out, which is that these are separate provisions with no cross-reference, and it can't simply be that the one-year bar is what determines availability or not. That is the F-3 statute of limitations provision, and they do serve different ends. The F-3 bar is intended to present a barrier to all litigants after a single year, the sort of statute of limitations finality concerns that the court necessarily and often adjudicates, but the availability bar is more designed to prevent piecemeal habeas litigation, which is something that Panetti v. Quarterman recognizes as something that AEDPA was designed to prevent and that this court recognized in its Goodrum decision, which is that prisoners should be filing all their claims in one petition. Raphael is a very good example of this. He filed nine claims in his initial petition. He moved to supplement to add two more before Davis. That was 11, and he moved to supplement successfully after Davis to add two more, numbers 12 and 13, and the availability standard exists so that he cannot then seven months later go back and say, well, I lost my 13 claims in my initial petition. Now I'm ready to raise my 14th. So I do think they serve different ends in that regard. And I would say that the last thing I would point out is that there is a way that this court could decide availability and infeasibility by adopting that 5th, 8th, and 11th Circuit approach and making it consistent with the standard that applies to equitable tolling, which also applies to the statute of limitations. That is a very high standard to obtain equitable tolling. I think that's one way the court could look at this case and say you can obtain, you can say that something is unavailable if you could have satisfied the equitable tolling standard, which really requires, and the language of the case law, is impossibility to have presented your claim within the statute. Here it was possible for these defendants to access Davis. They filed petitions that were still in. What in the record tells us that, I mean, we've talked a lot about Cesar. What in the record tells us that the other two had the opportunity, that's the word I've been using, to find Davis and read it? The fact that Rafael filed a motion to supplement after Davis was decided, and he also filed, actually, a motion for an extension of time that was also granted on his reply brief. And so those circumstances show that he had time. And I think more importantly than that, none of these defendants allege that they were completely deprived of access to the law library after Davis was decided. And so they don't even allege the kind of logistical infeasibility or unavailability that the government's position is that that should be the standard. And then finally, Torres, his reply brief was not due until well after Davis, which distinguishes this case from one that the petitioners cite in their reply brief, which was called Ellaby, a case in which the government actually didn't contest this issue because the petitioner filed his reply brief before Davis. And in Ellaby, unlike here, all the petitioners were really entitled to benefit from Davis. So it is the case that these petitioners all had a 924C conviction that was premised not only on a crime of violence, but also on a controlled substance offense. And this is something we'll argue if we are if the petitions are authorized. But these these petitioners really aren't entitled to this relief anyway. So I guess I want to push back a little bit. So on Torres, the record is that he had two months between the time Davis is issued and the district court decides his first petition. We also have from his declaration the sort of logistical challenges that he faced in getting to the law library. So, I mean, I don't know how many days and like what the time delay is, but it's certainly he's not in a situation where he can just be like, well, I'm going to the law library in a half an hour. Like he has to schedule that. There's some delays. This is a complicated issue. So maybe going to the law library once is not enough to actually figure this out and get it done. So, I mean, I guess I'm struggling a little bit with the argument that you made, which seems to just be the case was issued before the district court decided his case. So that's enough. I think if the court wants to sort of enumerate what the standard should be and authorize these, we could further litigate the facts and test them, which were obviously just in declarations in the reply brief. But none of them actually alleged that they had no opportunity to access the law library after Davis was decided, which I think would be the standard of. Is it actually impossible for you to access a case? If not, I suppose impossible is different than the infeasible, the feasibility test. Right. So you're advocating a higher test than feasibility and the other circuits. No, I would say it's a logistical infeasibility means that you actually are deprived of the opportunity to access a case. I would I would maybe retract the word impossible. But I do think that the ability to access the law library after a case comes out means that the case is available to you. Let me ask you this. I didn't quite understand your something that you said. If if we denied them second and successive, are any of these three applicants, would they be entitled to relief under Davis in your view? And if in fact, because it it gives them a five year reprieve. Correct. Yes. And so are are you saying that any of them would be eligible for the five year reprieve? Our position is if these are authorized petitions, we will argue that they are not entitled to Davis relief because what happened in this case was they have a 924 C conviction that was predicated on two things. One was a crime of violence, which is where Davis applies. And the second was a controlled substance offense, which is where Davis does not apply. And so the government on a remand or sorry, I guess if it's authorized to file these petitions, we'll argue that under this circuit's decision in Dominguez, because there is a viable predicate not affected by Davis, namely the controlled substance predicate, these defendants should not be eligible for relief. Well, let's say if you thought that they hypothetically that they were eligible for relief, what would you do? Would they be able to file something of factual innocence and you wouldn't oppose it? Or are you do you actively as the government if they are entitled to relief? Are you seeking to give relief to those that you think have actually actually what are you doing on this? Part of the reason why we distinguished between this case and the L.A.B. case was because we did believe that L.A.B. was entitled to relief and he actually then did receive that relief under Davis. And if these defendants were, in our opinion, entitled to relief, I suspect we would have come out differently and maybe said, we're going to look at this case differently and waive the argument about availability. And I don't think that we have really assessed or I can't speak to certain with certainty to whether we would invoke availability and an actual innocence context when generally our position is that if someone is actually innocent, that the procedural bars are overcome. Well, yeah, because I mean, I think we have to we have to accept the fact that judges really don't like people being punished for things they're actually innocent of. I think that's I think I think I can say that without going any further. But and I hope that the government would agree to that concept. I would agree to that, Your Honor. All right. I'm well over time, but we've taken you over. So we'll go back to Ms. Merchev and since I took that, we took that. I'll put I'll give you I I'll give you three and a half minutes for a rebuttal. OK, I'll bump it up a little because I'm such a nice person. Judge Callahan. Good morning. Just a moment. I apologize. I'm running into a technical issue with the timer, so I can't. All right. Just leave it the way. OK, just can. Is it just going. It's not responsive at all. It's not responding. All right. Can you just tell us when three and a half minutes are up. Yes, I'm using my I'm using my phone as a guide. So go ahead and start now. OK, and I'll do my best to keep my eye on the runaway clock. Yeah, just just just OK. You've all making you're all making helpful comments. OK, thank you. So I do just want to refocus on the standard. Right. Which is whether there is a prima facie case that you will that these applicants will be able to comply with the standards set out in this application. Right. Decidedly not about the merits of the claim, although it appears what the government has conceded is that they might not have fought this point if they thought that the merits of the claim were stronger. I don't think that that's something that should come into play at this point. And that's what this court's decision. And we're objecting. Stewart says it's also, again, only a prima facie standard. Right. It's only whether there's enough potential merit here to send this back to the district court where the statute envisions that the real ballgame will be where the district court will decide whether there's been compliance with functionally available standards. I do want to just briefly respond to equitable tolling. I didn't see that argument in the government's papers at all. But equitable tolling is an entirely different situation. Right. Equitable tolling is for individuals who have had that full year of time and they've blown that deadline. And now they're asking for additional time on top of that to get their claims in. And I think what the reason for the harshness of that rule is to say, well, look, all of these excuses about difficulties in getting into the law library, difficulties finding cases and talking to attorneys and getting your paper in your envelopes. That's why we give you a year after a year. We don't let you use those kind of excuses to get overtime. That doesn't mean that we should say that a person has to file 10 months early, you know, has to be held to that impossibility or, you know, near impossibility standards that the government advocates. I do want to pick up on on two points about Rossi Blake. Right. The government talks about, well, if it exists, if it was on some computer somewhere, you know, that should really be enough. Rossi Blake says, well, it asks whether the remedy was knowable to an ordinary prisoner in Blake's situation. That's a far different standard than it exists on a computer somewhere. Maybe the most skillful, the most savvy individual could find it. And then the last point about Rossi Blake that has some analogy here is Rossi Blake says a remedy isn't available if the authorities basically tell you it's not if there's some sort of misrepresentation. Now, I'm not saying that Judge Clouser was misrepresenting the law. It's not that's not that there was some sort of intent there. But the message transmitted both by the 2255 form and by Judge Clouser's order was that that this individual could do one thing that the I'm sorry that these individuals could do one thing. And that is respond to what the government has put in its opposition. Those are the points that I had. I don't know if I have time left or not. I'm happy to answer other questions, but otherwise I will submit on the briefs. Yes, I'll just ask one other factual question. And do you agree with the government's summary of the record that there's nothing before us that says that any of these clients had the inability to find Davis in the law library? None of them claimed that they had no access within the full four two to four month period of time that they had zero opportunity to visit a law library. I would press back on the thought that a one hour visit to the law library should be enough to change the tide in this case, right? Because it's not as though somebody sends you an email and says, well, you have a Davis claim. Go look it up. Right. You have to be looking at all the Supreme Court decisions. You'd have to be looking at all of the Ninth Circuit decisions for anything that might potentially help your case in any way. So I don't think the rule can be if you had the opportunity to go one time to the law library or two times to the law library. Right. We have one of these individuals that was in the shoe for most of the time between when Davis was decided and when the district court denied this decision. He indicates that in the shoe there there's one computer terminal for 200 individuals and that you have to sign up for a slot and you often wait two or three weeks before you would be able to get there. So I would push back on the standard being if you could ever get there during that period of time that it's functionally available. Thank you both for a very helpful argument in this matter and this will stand submitted. Thank you.
judges: Callahan, Forrest, Seeborg